## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

DRIVE NEW JERSEY INS. CO. and : 
DRIVE NEW JERSEY INS. CO. as : 
Subrogee of SHEENA H. HARRIS : 
          v.       :      **CIVIL ACTION NO.: 09-CV-1680**
                     : 
                     : 
BRIAN KANE, : 
YRC, INC. (as successor in interest to : 
ROADWAY EXPRESS, INC.), : 
OLD REPUBLIC INS. CO. and : 
ABC CORPORATION(S) : 

---

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO

## COMPEL ARBITRATION

Robert P. Corbin, Esquire (*Pro Hac Vice* Admission)
Audrey Ziadat, Esquire
GERMAN, GALLAGHER & MURTAGH, P.C.
Blason IV – Suite 208
513 S. Lenola Road
Moorestown, NJ 08057
(856) 235-8022

## PRELIMINARY STATEMENT

This Memorandum of Law is respectfully submitted on behalf of the defendants, Brian

Kane, YRC Inc., and Old Republic Ins. Co. in opposition to plaintiffs' Motion to Compel

Arbitration. Defendants had PIP coverage available under a policy of insurance and, as detailed

by the caselaw below, plaintiffs in this matter are not entitled to be reimbursed for PIP benefits

from defendants.

## STATEMENT OF FACTS

The plaintiffs', Drive New Jersey Insurance Company and Drive New Jersey Insurance

Company (as subrogee of Sheena H. Harris), filed a Complaint in which it alleged that its

subrogee, Sheena Harris, was injured on or about December 13, 2007 while operating a motor

vehicle which was traveling south on Route 42 in Bellmawr, Camden County, New Jersey. The

complaint further alleged that Mrs. Harris was injured when the vehicle she was operating was

allegedly struck by a tractor-trailer operated by Brian Kane and owned by YRC, Inc. (as

successor in interest to Roadway Express, Inc.). The plaintiffs allege that as a result of the

accident, it was required to pay claims in the amount of $260,875.13, including deductible.

Plaintiffs now attempt to recover the PIP benefits paid to its insured and to compel

arbitration in this matter pursuant to N.J.S.A. 39:6A-9.1. However, at the time of the accident,

defendants did carry PIP coverage and the New Jersey statute in question does not extend

reimbursement rights between two PIP carriers or against a party liable in tort who maintained

PIP insurance for the vehicle. See policy declarations attached hereto as Exhibit "A."

**LEGAL ARGUMENT**

SINCE DEFENDANTS' VEHICLE HAD PIP COVERAGE AT THE TIME OF THE

ACCIDENT, N.J.S.A. 39:6A-9.1 DOES NOT APPLY IN THIS MATTER BECAUSE

PLAINTIFFS ARE NOT ENTITLED TO REIMBURSEMENT OF PIP BENEFITS

When ruling on a motion to compel arbitration, a district court uses a standard analogous to the summary judgment standard. The party opposing the motion receives the benefit of all reasonable doubts and inferences that may arise. Schwartz v. Comcast Corp., 256 Fed. App. 515, 2007 U.S. App. LEXIS 27617 (3rd Cir 2007).

At the time of the accident, defendant carried PIP coverage under Old Republic Insurance Company, policy number MWML 18562. See Exhibit "A."

Plaintiffs are correct that, under N.J.S.A. 39:6A-9.1, all disputes between insurers regarding the recovery of medical expense payments are to be resolved "by agreement of the involved parties or, upon failing to agree, by arbitration." However, N.J.S.A. 39:6A-9.1 *does not apply to an alleged tortfeasor whose vehicle had PIP coverage at the time of the accident* (emphasis provided). See Empire Fire & Marine Ins. Co. v. GSA Ins. Co., 354 N.J. Super 415 (2002).

In Empire, the insurer paid PIP benefits to its insureds after they were injured in an automobile accident with the commercial carrier's insured vehicle. The insurer then proceeded to arbitration pursuant to N.J.S.A. 39:6A-9.1. Only after the arbitration award was final and in a separate complaint did defendant assert that it had PIP coverage in an attempt to vacate the arbitration award. The Court held that if the PIP carrier had asserted the defense that it provided PIP coverage prior to the arbitration, it would have prevailed at arbitration.[1] Id.

_____

[1] However, since the Appellate Court reviewed the issue after the entry of the arbitration award and only as an appeal to the lower court's grant of summary judgment and vacation of the award, the Court held these to be

3

In their Memorandum of Law, plaintiffs rely on the unpublished opinion in First Trenton Indemnity v. South Jersey Gas Co., No. A-3534-99T2 (App.Div. March 22, 2001). However, in Empire, the Appellate Court addressed their opinion in First Trenton and specifically corrected a misconstruction of N.J.S.A. 39:6A-9.1. The Court held "To the extent the emphasized language (of N.J.S.A. 39:6A-9.1 relating to either agreement by the parties or arbitration) might be understood to reflect a construction of N.J.S.A. 39:6A-9.1 that extends reimbursement rights between two PIP carriers, *that is incorrect* (emphasis supplied)." See also State Farm Mutual Auto Ins. Co. v. Licensed Bev. Ins. Ex., 146 N.J. 1, 15, 679 A.2d 620 (1996)("The reimbursement right conferred by section 9.1 encompasses all tortfeasors that are not subject to the No-Fault Law."); Unsatisfied Claim & Judgment Fund Board v. N.J. Mfrs. Ins. Co., 138 N.J. 185, 191, 195, 649 A.2d 1243 (1994)("the statute allows PIP carriers to recover not from other PIP carriers but from non-PIP carriers and uninsureds . . . [t]he legislative history shows a conscious decision to eliminate any right of recovery between two PIP carriers.").

In applying the above to the instant matter, no defendants in this matter were non-PIP carriers or uninsureds. Thus, as detailed by the Appellate Court in Empire, N.J.S.A. 39:6A-9.1, requiring arbitration does not apply in the instant matter and plaintiffs are barred from reimbursement of PIP benefits as against the defendants in this matter.

---

erroneous since the arbitration award could only be vacated upon a showing of fraud, corruption, or similar wrongdoing pursuant to N.J.S.A. 2A:24-8. Id.

## CONCLUSION

WHEREFORE, defendants respectfully request that plaintiffs' Motion to Compel

Arbitration be denied.

Dated: December 18, 2009

Robert P. Corbin, Esquire
(*Pro Hac Vice* Admission)
Audrey Ziadat, Esquire
GERMAN, GALLAGHER & MURTAGH, P.C.
Blason IV – Suite 208
513 S. Lenola Road
Moorestown, NJ  08057
(856) 235-8022
(215) 732-4182 (fax)

5

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

DRIVE NEW JERSEY INS. CO. and          :
DRIVE NEW JERSEY INS. CO. as           :
Subrogee of SHEENA H. HARRIS           :
              v.                       :          CIVIL ACTION NO.: 09-CV-1680
                                       :
                                       :
BRIAN KANE,                            :
YRC, INC. (as successor in interest to :
ROADWAY EXPRESS, INC.),                :
OLD REPUBLIC INS. CO. and              :
ABC CORPORATION(S)                     :

---

## ORDER

AND NOW, this          day of                    , 2009, upon consideration of

plaintiffs' Motion to Compel Arbitration, and defendants' response thereto, it is hereby

ORDERED and DECREED that plaintiffs' Motion is DENIED.

BY THE COURT:

_____
Susan D. Wigenton, U.S.D.J.



**OLD REPUBLIC**
Insurance Company

## OLD REPUBLIC INSURANCE COMPANY
Executive Office: 414 W. Pittsburgh, Greensburg, Pennsylvania 15601
Administrative Office: 445 South Moorland Road, Suite 300, Brookfield, WI 53005

### MOTOR CARRIER'S INDEMNITY POLICY
### DECLARATIONS

Producer: # 546
Lockton Companies
Kansas City, MO

POLICY NUMBER:     MWML    18582
PREVIOUS NUMBER:    New

Item 1.   **NAMED INSURED:**          Yellow Roadway Corporation

          **PRINCIPAL ADDRESS:**      10990 Roe Avenue
                                      Overland Park, KS  66211

Item 2.   **POLICY PERIOD:**    From:   03/01/04    To:   03/01/05
                                12:01 a.m. Standard Time at the address of the Named Insured stated above.

Item 3.   **COVERAGES PROVIDED**
          Indemnity pursuant to this policy is provided only for those coverages indicated below as
          included:

| COVERAGES | INCLUDED |
|---|---|
| A. Personal Injury | XX |
| B. Property Damage | XX |
| C. Uninsured and Underinsured Motorists | XX |
| D. Personal Injury Protection | XX |

Item 4.   **LIMIT OF INDEMNITY**
          $  3,000,000    Ultimate Net Loss All Coverages Combined Per Occurrence
Item 5    **DEDUCTIBLE**
          $  3,000,000    Ultimate Net Loss
Item 6.   **PREMIUM COMPUTATION**
          Estimated Annual Premium    $
          Minimum Annual Premium      $   N/A
          Premium Basis               $   Flat

Page 1 of 2



EXHIBIT A

**U-917 (8-89)   OLD REPUBLIC INSURANCE COMPANY**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This Endorsement, effective 12:01 A.M., __03/01/04__ ____ forms a party of Policy __MWML 18562__ __

issued to __Yellow Roadway Corporation__ ____ _____ By Old Republic Insurance Company

<u>NAMED INSURED ENDORSEMENT</u>

Yellow Roadway Corporation and its associated, affiliated or subsidiary companies as have been, are now, or may hereafter be constituted.

All other terms, conditions and exclusions remain the same.

**FORM B**

U-40A

# ENDORSEMENT

Additional Premium:

Total Premium:

This endorsement, effective     3-1-05                    forms a part of Policy No.     MWML 18562

policy effective date     3-1-05          expiration date     3-1-06          issued to     Yellow Roadway Corporation

by OLD REPUBLIC INSURANCE COMPANY, Greensburg, Pennsylvania

In consideration of an additional premium of              It is hereby understood and agreed that this policy is
extended from 3/1/05 to 3/1/06. The Premium breakout for the Automobile and General Liability are as
follows:

    General Liability
    Auto Liability

All other terms and conditions remain unchanged.

Endorsement #1

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or
limitations of the Policy or any Endorsement attached thereto, except as herein set forth.

This Endorsement shall not be valid until countersigned by a duly authorized representative of the Company.

Attest:

_____          _____
            Secretary                                    President

Countersigned at Brookfield, Wisconsin this .......1st........ day of .......April......... 2005.........

_____          Authorized Representative.

                                                              4/1/05

U-40A

# ENDORSEMENT

Additional Premium:

Return Premium:

This endorsement, effective    3-1-06                    forms a part of Policy No.    MWML 18582

policy effective date    3-1-06          expiration date    3-1-07        issued to    YRC Worldwide Inc.

by OLD REPUBLIC INSURANCE COMPANY, Greensburg, Pennsylvania

In consideration of an additional premium of          ), it is hereby understood and agreed that this policy is extended from 3/1/06 to 3/1/07.  The premium breakout for the Automobile and General Liability are as follows:

General Liability

Auto Liability

All other terms and conditions remain the same.

Endorsement #9

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of the Policy or any Endorsement attached thereto, except as herein set forth.

This Endorsement shall not be valid until countersigned by a duly authorized representative of the Company.

Attest:

_____          _____
Secretary                                          President

Countersigned at Brookfield, Wisconsin  this .......29th................ day of . ...March.... ........ ... 2006........

_____          Authorized Representative.

3/29/06

U-40A

# ENDORSEMENT

Additional Premium:

Return Premium:

This endorsement, effective   3-1-07                    forms a part of Policy No.   MWML 18562

policy effective date   3-1-07        expiration date   3-1-08        issued to   YRC Worldwide Inc.

by OLD REPUBLIC INSURANCE COMPANY, Greensburg, Pennsylvania

In consideration of an additional premium of $          , it is hereby understood and agreed that this Policy is extended from 3-1-07 to 3-1-08.  The premium breakout for the Automobile and General Liability are as follows:

       General Liability
       Auto Liability

All other terms and conditions remain the same.

Endorsement #19

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of the Policy or any Endorsement attached thereto, except as herein set forth.

This Endorsement shall not be valid until countersigned by a duly authorized representative of the Company.

Attest:

_____                     _____
Secretary                                                                      President

Countersigned at Brookfield, Wisconsin  this ....27th........... day of .....March........ 2007.... ...

_____        Authorized Representative.

3/27/07

**U-917 (8-89)   OLD REPUBLIC INSURANCE COMPANY**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**DEDUCTIBLE COVERAGE ENDORSEMENT**
**DEDUCTIBLE AMOUNT(S) EQUAL TO THE LIMIT(S) OF INSURANCE/LIABILITY**
**(COVERAGE EXTENSION SUPPLEMENTARY PAYMENTS/ALAE IN ADDITION)**

This endorsement modifies all insurance provided under the policy.

In consideration of the premium charged, the following provisions apply to the insurance provided by this policy and supercede any provision(s) to the contrary.

With respect to Coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by endorsement.

A.  The Coverages of your policy are subject to deductibles. The deductible amount(s) equal the Limit(s) of Insurance/Limit(s) of Liability applicable to the Coverage under which sums are payable as damage(s), a claim(s) is made, "suit(s)" is brought or "loss(es)" is payable.

   The deductible will apply on the same basis as the Coverage Limit(s) of Insurance/(Limit(s) of Liability, regardless of how described, applicable to sums payable as damages or "loss(es)" payable arising from claim(s) made or "suit(s)" bought.

   The deductible reduces the applicable Coverage Limit(s) of Insurance/Limit(s) of Liability.

B.  In addition to the deductibles, you are responsible for reimbursing us for amounts we pay described under Coverage Extensions, Supplementary Payments (also referred to as ALAE - allocated loss adjustment expense).

C.  OUR RIGHT TO REIMBURSEMENT

   We may pay any part or all of the deductible to effect settlement of any claim, "suit" or "loss" and upon notification of the action taken, you shall promptly reimburse us for the amount of the deductible that has been paid by us.

D.  The terms of this insurance, including those with respect to your duties in the event of an "accident", offense, claim, "suit" or "loss" apply irrespective of the application of the deductible.

PCA 026 06 04

Page 1 of 1

POLICY NUMBER:

COMMERCIAL AUTO
CA 22 30 11 04

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NEW JERSEY PERSONAL INJURY PROTECTION

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in, New Jersey, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement Effective: | Countersigned By: |
|---|---|
| Named Insured: | |
| | (Authorized Representative) |

SCHEDULE

| EXTENDED MEDICAL EXPENSE BENEFITS | |
|---|---|
| Benefits | Limit Of Insurance |
| Medical Expenses | $ 1,000     per person per "accident" |

© ISO Properties, Inc., 2004

| MEDICAL EXPENSE BENEFITS DEDUCTIBLE |
| --- |
| Unless otherwise indicated to the left, medical expense benefits are subject to a deductible of $250 per "accident". |
| When indicated to the left, medical expense benefits applicable to: |
| A. The "named insured" and, if the "named insured" is an individual, any "family members" will be subject to a deductible of $_____ per "accident" instead of the $250 deductible. |
| B. "Insured person" other than the "named insured" and, if the "named insured" is an individual, any "family members" shall be subject to a separate deductible of $250 per "accident". |
| **MEDICAL EXPENSE BENEFITS CO-PAYMENT** |
| Medical expense benefits are subject to a co-payment of 20% per "accident" for amounts payable between the applicable deductible and $5,000. |
| **DELETION OF BENEFITS OTHER THAN MEDICAL EXPENSES OPTION** |
| All Personal Injury Protection benefits other than medical expense benefits are deleted with respect to the "named insured" and, if the "named insured" is an individual, any "family members", when indicated to the left. Refer to the Deletion Of Benefits Other Than Medical Expense Provision. |
| **MEDICAL EXPENSE BENEFITS-AS-SECONDARY OPTION** |
| If the "named insured" is an individual, medical expense benefits with respect to the "named insured" and "family members", are secondary to the health benefits plans under which the "named insured" and "family members" are insured, when indicated to the left. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A. Coverages**

**1. Personal Injury Protection**

We will pay personal injury protection benefits for "bodily injury" sustained by an "eligible injured person" or an "insured person" caused by an "accident" occurring during the policy period and arising out of the ownership, maintenance or use, including loading or unloading, of a "private passenger auto" as an auto.

These Personal Injury Protection Benefits consist of:

**a. Medical Expense Benefits**

An amount not exceeding $250,000 per person per "accident" for reasonable and necessary expenses incurred for medical, surgical, rehabilitative and diagnostic treatments and services, hospital expenses, ambulance or transportation services, medication and non-medical expenses that are prescribed by a treating "health care provider" for a permanent or significant brain, spinal cord or disfiguring injury.

Non-medical expense means charges for products and devices, not exclusively used for medical purposes or as durable medical equipment, such as vehicles, durable goods, equipment, appurtenances, improvements to real or personal property, fixtures and services and activities such as recreational activities, trips and leisure activities.

All medical expenses must be rendered by a "health care provider", be "clinically supported" and consistent with the symptoms, diagnosis or indications of the "insured". They must also be consistent with the most appropriate level of service that is in accordance with the standards of good practice and standard professional treatment protocols, including care paths for an "identified injury". They must not be rendered primarily for the convenience of the "insured" or "health care provider" nor may they involve unnecessary testing or treatment.

© ISO Properties, Inc., 2004
CA 22 30 11 04

However, medical expenses include any nonmedical remedial treatment rendered in accordance with recognized religious methods of healing

b. **Income Continuation Benefits**

An amount not exceeding a limit of $100 per week and a total limit of $5,200 payable for the loss of income of an "income producer" during his or her lifetime, as a result of "bodily injury" disability, not to exceed net "income" normally earned during the period in which benefits are payable.

c. **Essential Services Benefits**

An amount not exceeding a limit of $12 per day and a total limit of $4,380 payable to an "eligible injured person" as reimbursement for payments made to others, for substitute essential services of the type actually rendered during his or her lifetime and which he or she would ordinarily have performed not for "income" but for the care and maintenance of himself or herself and persons related to the "eligible injured person" by blood, marriage or adoption (including a ward or foster child) who are residents of the same household as the "eligible injured person".

d. **Death Benefits**

The amount or amounts payable in the event of the death of an "eligible injured person" as determined below:

(1) If the "eligible injured person" was an "income producer" at the time of the "accident", an amount equal to the difference between $5,200 and all basic income continuation benefits paid for any loss of "income" resulting from his or her injury prior to his or her death;

(2) If the "eligible injured person" ordinarily performed essential services for the care and maintenance of himself or herself, his or her family or family household, an amount equal to the difference between $4,380 and all basic essential services benefits paid with respect to his or her injury prior to death.

e. **Funeral Expense Benefits**

An amount not exceeding $1,000 for reasonable funeral, burial and cremation expenses incurred

2. **Extended Medical Expense Benefits**

We will pay extended medical expense benefits for "bodily injury" sustained by an "insured person" caused by an "accident" occurring during the policy period and arising out of the ownership, maintenance or use, including loading and unloading, of a "highway vehicle" not owned by or furnished or available for the regular use of the "named insured" or any "family member".

Subject to the limits shown in the Schedule or Declarations, Extended Medical Expense Benefits consist of the following:

Reasonable expenses incurred for medical, surgical, rehabilitative and diagnostic treatments and services, hospital expenses, ambulance or transportation services, medication and non-medical expenses that are prescribed by a treating "health care provider" for a permanent or significant brain, spinal cord or disfiguring injury.

Non-medical expense means charges for products and devices, not exclusively used for medical purposes or as durable medical equipment, such as vehicles, durable goods, equipment, appurtenances, improvements to real or personal property, fixtures and services and activities such as recreational activities, trips and leisure activities.

All medical expenses must be rendered by a "health care provider", be "clinically supported" and consistent with the symptoms, diagnosis or indications of the "insured". They must also be consistent with the most appropriate level of service that is in accordance with the standards of good practice and standard professional treatment protocols, including care paths for an "identified injury". They may not be rendered primarily for the convenience of the "insured" or "health care provider" nor may they involve unnecessary testing or treatment

However, medical expenses include any nonmedical remedial treatment rendered in accordance with recognized religious methods of healing.

CA 22 30 11 04                © ISO Properties, Inc., 2004                Page 3 of 13

**B. Exclusions**

1. **Personal Injury Protection**

   We will not pay Personal Injury Protection benefits for "bodily injury":

   a. To a person whose conduct contributed to the "bodily injury" in any of the following ways:

      (1) While committing a high misdemeanor or felony or seeking to avoid lawful apprehension or arrest by a police officer; or

      (2) While acting with specific intent to cause injury or damage to himself or herself or others;

   b. To any person who, at the time of the "accident", was the owner or registrant of a "private passenger auto" registered or principally garaged in New Jersey that was being operated without Personal Injury Protection Coverage;

   c. To any person other than the "named insured" or any "family member" or a resident of New Jersey, if the "accident" occurs outside of New Jersey;

   d. Arising out of the ownership, maintenance or use, including loading or unloading, of any vehicle while located for use as a residence or premises other than for transitory recreational purposes;

   e. Due to war, whether or not declared, civil war, insurrection, rebellion or revolution, or to any act or condition incident to any of the foregoing;

   f. Resulting from the radioactive, toxic, explosive or other hazardous properties of nuclear material;

   g. To any person, other than the "named insured" or any "family member", if such person is entitled to New Jersey Personal Injury Protection Coverage as a "named insured" or "family member" under the terms of any other policy with respect to such coverage;

   h. To any "family member", if such person is entitled to New Jersey Personal Injury Protection Coverage as a "named insured" under the terms of another policy; or

   i. To any person operating or occupying a "private passenger auto" without the permission of the owner or the "named insured" under the policy insuring that "auto".

j. For the following "diagnostic tests":

   (1) Brain mapping, when not done in conjunction with appropriate neurodiagnostic testing;

   (2) Iridology;

   (3) Mandibular tracking and simulation;

   (4) Reflexology;

   (5) Spinal diagnostic ultrasound;

   (6) Surface electromyography (surface EMG);

   (7) Surrogate arm mentoring; or

   (8) When used to treat temporomandibular joint disorder (TMJ/D):

      (a) Doppler ultrasound;

      (b) Electroencephalogram (EEG);

      (c) Needle electromyography (needle EMG);

      (d) Sonography;

      (e) Thermograms/thermographs;

      (f) Videofluoroscopy; or

   (9) Any other "diagnostic test" that is determined to be ineligible for coverage under Personal Injury Protection Coverage by New Jersey law or regulation.

2. **Extended Medical Expense Benefits**

   The exclusions that apply to Personal Injury Protection also apply to Extended Medical Expense Benefits. In addition, the following exclusions are added to Extended Medical Expense Benefits.

   a. We will not pay Extended Medical Expense Benefits for "bodily injury" to any "insured" who is entitled to benefits for the "bodily injury" under:

      (1) Personal Injury Protection Coverage; or

      (2) Any:

         (a) Workers' compensation law; or

         (b) Medicare provided under federal law.

© ISO Properties, Inc., 2004

CA 22 30 11 04

b. We will not pay Extended Medical Expense Benefits for "bodily injury" to any "insured" who would be entitled to benefits for the "bodily injury" under Personal Injury Protection Coverage, except for the application of a:

(1) Deductible;

(2) Co-payment; or

(3) Medical fee schedule promulgated by the New Jersey Department of Banking and Insurance.

## C. Limit Of Insurance

1. Any amount payable by us as Personal Injury Protection benefits for "bodily injury" shall be reduced by:

   a. All amounts paid, payable or required to be provided under any workers' compensation or employees' temporary disability law.

   b. Medicare provided under federal law.

   c. Benefits actually collected that are provided under federal law to active and retired military personnel.

2. Any amount payable by us as medical expense benefits will be limited by medical fee schedules, as promulgated by the New Jersey Department of Banking and Insurance for specific injuries or services.

3. Any amounts payable for medical expense benefits as the result of any one "accident" shall be:

   a. Reduced by the applicable deductible indicated in the Schedule or in the Declarations; and

   b. Subject to the co-payment of 20% for the amount between the applicable deductible and $5,000.

4. The applicable limit of income continuation benefits applies separately to each full regular and customary work week of an "eligible injured person". If this disability from work or employment consists of or includes only a part of such a week, we shall be liable for only that proportion of such weekly limit that the number of days lost from work or employment during the partial week bears to the number of days in his or her full work week.

5. If the Schedule or Declarations indicates that the "named insured" has elected the Medical Expense Benefits As Secondary Option, the following provisions apply to medical expense benefits:

   a. **Priority Of Benefits**

      (1) The health benefits plans under which the "named insured" and any "family member" are insured shall provide primary coverage for "allowable expenses" incurred by the "named insured" and any "family member" before any medical expense benefits are paid by us.

      (2) This insurance shall provide secondary coverage for medical expense benefits for "allowable expenses", which remained uncovered.

      (3) The total benefits paid by the health benefits plans and this insurance shall not exceed the total amount of "allowable expenses"

   b. **Determination Of Medical Expense Benefits Payable**

      (1) To calculate the amount of "actual benefits" to be paid by us, we will first determine the amount of "eligible expenses" which would have been paid by us, after application of the deductible and co-payment indicated in the Schedule or Declarations, had the "named insured" not elected the Medical Expense Benefits As Secondary Coverage Option.

      (2) If the remaining "allowable expenses" are:

         (a) Less than the benefits calculated in Paragraph (1) above, we will pay "actual benefits" equal to the remaining "allowable expenses", without reducing the remaining "allowable expenses" by the deductible or co-payment.

         (b) Greater than the benefits calculated in Paragraph (1) above, we will pay "actual benefits" equal to the benefits calculated in Paragraph 1. above, without reducing the remaining "allowable expenses" by the deductible or co-payment

 © ISO Properties, Inc., 2004

(3) We will not reduce the "actual benefits" determined in Paragraph 2.:

  (a) By any deductibles or co-payments of the health benefits plans which have provided primary coverage for medical expense benefits; or

  (b) For any "allowable expense" remaining uncovered which otherwise would not be an "eligible expense" under Personal Injury Protection Coverage, except as set forth in Paragraph (4) below.

(4) In determining remaining uncovered "allowable expenses", we shall not consider any amount for items of expense which exceed the dollar or percent amounts recognized by the medical fee schedules promulgated by the New Jersey Department of Banking and Insurance.

(5) The total amount of medical expense benefits for the "named insured" or any "family member" per "accident" shall not exceed the maximum amount payable for medical expense benefits under this policy.

**c. Health Benefits Plan Ineligibility**

(1) If, after the "named insured" has elected the Medical Expense Benefits As Secondary Coverage Option, it is determined that the "named insured" or any "family member" did not have a health benefits plan in effect at the time an "accident" occurred which resulted in "bodily injury" to the "named insured" or any "family member", medical expense benefits shall be provided to the "named insured" or any "family member", subject to the following:

  (a) Only Paragraph 1. of the Limit Of Insurance Provision will apply with respect to medical expense benefits.

  (b) Any amount payable for medical expense benefits for the "named insured" and any "family member" as a result of any one "accident" shall:

    (1) Be reduced by a deductible equal to the sum of $750 plus the applicable deductible indicated in the Schedule or in the Declarations; and

(2) Be subject to a co-payment of 20% for amounts less than $5,000 after the deductible has been applied.

(3) Be determined:

  (i) By the medical fee schedules promulgated by the New Jersey Department of Insurance; or

  (ii) By us, on a reasonable basis, considering the medical fee schedules for similar services or equipment in the region where the service or equipment was provided, if an item of expense is not included on the medical fee schedules.

(4) Not exceed the maximum amount payable for medical expense benefits under this policy.

(2) All items of medical expense incurred by the "named insured" or any "family member" for the treatment of "bodily injury" shall be "eligible expenses" to the extent the treatment or procedure from which the expenses arose:

  (a) Is recognized on the medical fee schedules promulgated by the New Jersey Department of Banking and Insurance; or

  (b) Are reasonable expenses in accordance with Section 4 of the New Jersey Reparation Reform Act.

(3) We shall be entitled to recover the difference between:

  (a) The reduced premium paid under this policy for the Medical Expense Benefits As Secondary Option; and

  (b) The premium which would have been paid under this policy had the "named insured" not elected such option.

We will not provide any premium reduction for the Medical Expense Benefits As Secondary Option for the remainder of the policy period.

© ISO Properties, Inc., 2004    CA 22 30 11 04

6. The limit of insurance shown in the Schedule or Declarations for weekly income continuation benefits shall be prorated for any period of "bodily injury" disability less than one week

**D. Changes In Conditions**

1. **The Duties In The Event Of Accident, Claim, Suit Or Loss Condition** is amended by the addition of the following.

   a. If an "eligible injured person", "insured person" or the legal representative or survivors of either institutes legal action to recover damages for injury against a person or organization who is or may be liable in tort therefor, he or she must promptly give us a copy of the summons and complaint or other process served in connection with the legal action

   b. The "eligible injured person", "insured person" or someone on their behalf must promptly give us written proof of claim including:

   (1) Full particulars of the nature and extent of the "bodily injury"; and

   (2) Such other information that will help us determine the amount due and payable.

   c. The "eligible injured person" or "insured person" must submit to physical examination by physicians when and as often as we reasonably require and a copy of the medical report will be forwarded to such "eligible injured person" or "insured person" if requested.

   d. In the event of "accident", claim, "suit" or "loss", if the notice, proof of claim or other reasonably obtainable information regarding the accident is received by us more than 30 days after the accident, we may impose an additional medical expense benefits co-payment in accordance with New Jersey law or regulation. This copayment shall be in addition to:

   (1) Any medical expense benefits deductible or co-payment; or

   (2) Any penalty imposed in accordance with our Decision Point Review Plan.

2. The **Policy Period, Coverage Territory** Condition for Personal Injury Protection and Extended Medical Expense Benefits, is replaced by the following:

   This coverage part applies only to "accidents" which occur during the policy period anywhere in the world.

3. For Extended Medical Expense Benefits, the **Two Or More Coverage Forms Or Policies Issued By Us** Condition does not apply. However, no one will be entitled to receive duplicate payments for the same elements of "loss".

4. The following **Reimbursement And Trust** Condition is added:

   Subject to any applicable limitations set forth in the New Jersey Automobile Reparation Reform Act, if we make any payment to any "eligible injured person" or "insured person" under this coverage and that person recovers from another party, he or she shall hold the proceeds in trust for us and pay us back the amount we have paid. We will have a lien against such payment, and may give notice of the lien to the person or organization causing "bodily injury", his or her agent or insurer or a court having jurisdiction in the matter.

5. The following **Payment Of Personal Injury Protection Benefits** Conditions are added:

   a. Medical expense benefits and essential services benefits may be paid at our option to the "eligible injured person", "insured person" or the person or organization furnishing the products or services for which such benefits are due. These benefits shall not be assignable except to providers of service benefits. Any such assignment is not enforceable unless the provider of service benefits agrees to be subject to the requirements of our Decision Point Review Plan. In the event of the death of an "eligible injured person" or "insured person" any amounts payable, but unpaid prior to death, for medical expense benefits are payable to the "eligible injured person's" or "insured person's" estate.

   b. Benefits payable under Paragraph A.1.d.(1) of the description of death benefits are payable to the "eligible injured person's" surviving spouse, or if there is no surviving spouse, to his or her surviving children, or if there is not a surviving spouse or any surviving children, to the "eligible injured person's" estate.

   c. Benefits payable under Paragraph A.1.d.(2) of the description of death benefits are payable to the person who has incurred the expense of providing essential services.

   d. Funeral expense benefits are payable to the "eligible injured person's" or "insured person's" estate.

© ISO Properties, Inc., 2004

6. The following **Deletion Of Benefits Other Than Medical Expenses Option** Condition is added:

When the Schedule or the Declarations indicate that the Deletion Of Benefits Other Than Medical Expenses Option applies, we will pay personal injury protection benefits consisting only of medical expense benefits for the "named insured" and "family members".

7. The following **Employee Benefits Reimbursement** Condition is added:

If the "eligible injured person" or "insured person" fails to apply for workers' compensation benefits or employees' temporary disability benefits for which that person is eligible, we may immediately apply to the provider of these benefits for reimbursement of any personal injury protection benefits that we have paid.

8. The following **Proof Of Health Benefits Plan Coverage** Condition is added:

If the "named insured" has elected the Medical Expense Benefits As Secondary Option, the "named insured" shall provide proof that the "named insured" and "family members" are insured by health insurance coverage or benefits in a manner and to an extent approved by the New Jersey Department of Banking and Insurance.

9. The following **Special Requirements For Medical Expenses** Conditions are added:

a. **Care Paths For "Identified Injuries" (Medical Protocols)**

(1) The New Jersey Department of Banking and Insurance has established by regulation the standard courses of medically necessary diagnosis and treatment for "identified injuries". These courses of diagnosis and treatments are known as care paths.

The care paths do not apply to treatment administered during "emergency care".

(2) Upon notification to us of a "bodily injury" covered under this policy, we will advise the "insured" of the care path requirements established by the New Jersey Department of Banking and Insurance.

(3) Where the care paths indicate a decision point, further treatment or the administration of a diagnostic test is subject to our Decision Point Review Plan.

A decision point means the juncture in treatment where a determination must be made about the continuation or choice of further treatment of an "identified injury".

b. **Coverage For "Diagnostic Tests"**

(1) In addition to the care path requirements for an "identified injury", the administration of any of the following "diagnostic tests" is also subject to the requirements of our Decision Point Review Plan:

(a) Brain audio evoked potential (BAEP);

(b) Brain evoked potential (BEP);

(c) Computer assisted tomographic studies (CT, CAT Scan);

(d) Dynatron/cyber station/cybex.

(e) H-reflex Study;

(f) Magnetic resonance imaging (MRI);

(g) Nerve conduction velocity (NCV);

(h) Somasensory evoked potential (SSEP);

(i) Sonogram/ultrasound;

(j) Visual evoked potential (VEP).

(k) Any of the following "diagnostic tests" when not otherwise excluded under Exclusion J.:

(i) Brain mapping;

(ii) Doppler ultrasound;

(iii) Electroencephalogram (EEG),

(iv) Needle electromyography (needle EMG),

(v) Sonography;

(vi) Thermography/thermograms;

(vii) Videofluoroscopy; or

(l) Any other "diagnostic test" that is subject to the requirements of our Decision Point Review Plan by New Jersey law or regulation

(2) The "diagnostic tests" listed under Paragraph (2)(a) must be administered in accordance with New Jersey Department of Banking and Insurance regulations which set forth the requirements for the use of "diagnostic tests" in evaluating injuries sustained in "auto" "accidents".

 © ISO Properties, Inc., 2004 CA 22 30 11 04

However, those requirements do not apply to "diagnostic tests" administered during "emergency care".

(3) We will pay for other "diagnostic tests" that are:

    (a) Not subject to our Decision Point Review Plan; and

    (b) Not specifically excluded under Exclusion 1.l.; only if administered in accordance with the criteria for medical expenses as provided in this endorsement.

c. **Decision Point Review Plan**

(1) Coverage for certain medical expenses under this endorsement is subject to our Decision Point Review Plan, which provides appropriate notice and procedural requirements that must be adhered to in accordance with New Jersey law or regulation. We will provide a copy of this plan upon request, or in the event of any claim for medical expenses under this coverage.

(2) Our Decision Point Review Plan includes the following minimum requirements as prescribed by New Jersey law or regulation:

    (a) The requirements of the Decision Point Review Plan only apply after the tenth day following the "accident".

    (b) We must be provided prior notice as indicated in our plan, with appropriate "clinically supported" findings, that additional treatment for an "identified injury" or the administration of a "diagnostic test" listed under Paragraph (2)(a) is required

    The notice and "clinically supported" findings may include a comprehensive treatment plan for additional treatment.

(3) Once we receive such notice with the appropriate "clinically supported" findings, we will, in accordance with our plan:

    (a) Promptly review the notice and supporting materials; and

    (b) If required as part of our review, request any additional medical records or schedule a physical examination.

(4) We will then determine and notify the "eligible injured person" or the "insured person" whether we will provide coverage for the additional treatment or "diagnostic test" as indicated in our plan. Any determination we make will be based on the determination of a physician.

(5) Any physical examination of an "eligible injured person" or "insured person" scheduled by us will be conducted in accordance with our plan.

(6) A penalty will be imposed in accordance with our plan if:

    (a) We do not receive proper notice and "clinically supported" findings;

    (b) We are not provided medical records if requested by us; or

    (c) Any "eligible injured person" or "insured person" fails to appear for the physical examination if required by us.

d. **Dispute Resolution**

If we and any person seeking Personal Injury Protection Coverage do not agree as to the recovery of Personal Injury Protection Coverage under this endorsement, then the matter may be submitted to dispute resolution, on the initiative of any party to the dispute, in accordance with New Jersey law or regulation.

Any request for dispute resolution may include a request for review by a medical review organization.

5. The following condition is added for **Personal Injury Protection:**

**COORDINATION AND NON-DUPLICATION**

a. Regardless of the number of "autos" insured for basic personal injury protection coverage pursuant to Section 4 of the New Jersey Automobile Reparation Reform Act or the number of insurers or policies providing such coverage, there shall be no duplication of payment of basic personal injury protection benefits and the aggregate maximum amount payable under this and all applicable policies with respect to "bodily injury" to any one person as the result of any one "accident" shall not exceed the applicable amounts or limits specified in Section 4 of said Act.

b. If an "eligible injured person" under this coverage is also an "eligible injured person" under other complying policies, the insurer paying benefits to such person shall be entitled to recover from each of the other insurers an equitable pro rata share of the benefits paid. The pro rata share is the proportion that the insurer's liability bears to the total of all applicable limits. Complying Policy means a policy of automobile liability insurance maintained pursuant to the requirements of Section 3 of the New Jersey Automobile Reparation Reform Act and providing basic personal injury protection coverage as approved by the Commissioner of Insurance.

6. The following condition is added for **Personal Injury Protection and Extended Medical Expense Benefits**:

   **MEDICAL PAYMENTS DELETION**

   In consideration of the Coverage provided for Personal Injury Protection and Extended Medical Expense Benefits in Paragraphs A.1. and A.2. of this endorsement, and the adjustment of applicable rates because of "bodily injury" to an "eligible injured person", any auto medical payments coverage provided under the coverage part is deleted with respect to an "auto" which is a covered "auto".

**E. Definitions**

The Definitions Section is amended as follows:

1. The definition of "bodily injury" is replaced by the following:

   "Bodily injury" means bodily harm, sickness or disease, including an "identified injury" or death that results.

2. The following definitions are added for Personal Injury Protection and Extended Medical Expense Benefits:

   a. "Actual benefits" means those benefits determined to be payable for "allowable expenses".

   b. "Allowable expense" means a medically necessary, reasonable and customary item of expense covered as benefits by the "named Insured's" or "family member's" health benefits plan or personal injury protection benefits as an "eligible expense", at least in part. When benefits provided are in the form of services, the reasonable monetary value of each such service shall be considered as both an "allowable expense" and a paid benefit.

c. "Clinically supported" means that a "health care provider", prior to selecting, performing or ordering the administration of a treatment or "diagnostics test", has:

   (1) Physically examined the "eligible injured person" or "insured person" to ensure that the proper medical indications exist to justify ordering the treatment or test;

   (2) Made an assessment of any current and/or historical subjective complaints, observations, objective findings, neurologic indications, and physical tests;

   (3) Considered any and all previously performed tests that relate to the injury and the results and which are relevant to the proposed treatment or test; and

   (4) Recorded and documented these observations, positive and negative findings, and conclusions on the "insureds" medical records.

d. "Diagnostic test(s)" means a medical service or procedure utilizing any means other than bioanalysis, intended to assist in establishing a:

   (1) Medical;

   (2) Dental;

   (3) Physical therapy;

   (4) Chiropractic or

   (5) Psychological diagnosis;

   for the purpose of recommending or developing a course of treatment for the tested patient to be implemented by the treating practitioner or by the consultant.

e. "Eligible expense" means:

   (1) In the case of health benefits plans, that portion of the medical expenses incurred for the treatment of "bodily injury" which is covered under the terms and conditions of the plan, without application of the deductible(s) and co-payment(s), if any.

© ISO Properties, Inc., 2004

CA 22 30 11 04

(2) In the case of personal injury protection benefits, that portion of the medical expenses incurred for the treatment of "bodily injury" which, without considering any deductible and co-payment, shall not exceed:

   (a) The percent or dollar amounts specified on the medical fee schedules, or the actual billed expense, whichever is less; or

   (b) The reasonable amount, as determined by us, considering the medical fee schedules for similar services or equipment in the region where the service or equipment was provided, when an incurred medical expense is not included on the medical fee schedules.

f. "Emergency care" means all treatment of a "bodily injury" which manifests itself by acute symptoms of sufficient severity such that absence of immediate attention could reasonably be expected to result in death, serious impairment to bodily functions or serious dysfunction to a bodily organ or part. Such emergency care shall include all medically necessary care immediately following an "accident", including but not limited to, immediate pre-hospitalization care, transportation to a hospital or trauma center, emergency room care, surgery, critical and acute care. Emergency care extends during the period of initial hospitalization until the patient is discharged from acute care by the attending physician. Emergency care shall be presumed when medical care is initiated at a hospital within 120 hours of the "accident".

g. "Family member" means a person related to the "named insured" by blood, marriage or adoption (including a ward or foster child) who is a resident of the same household as the "named insured".

h. "Health care provider" means those persons licensed or certified to perform health care treatment or services compensable as medical expenses and shall include, but not be limited to:

   (1) Hospital or health care facilities that are maintained by a State or any of its political subdivisions or licensed by the Department of Health and Senior Services.

(2) Other hospitals or health care facilities designated by the Department of Health and Senior Services to provide health care services, or other facilities, including facilities for radiology and diagnostic testing, free-standing emergency clinics or offices, and private treatment centers;

(3) A non-profit voluntary visiting nurse organization providing health care services other than in a hospital;

(4) Hospitals or other health care facilities or treatment centers located in other states or nations;

(5) Physicians licensed to practice medicine and surgery;

(6) Licensed chiropractors, dentists, optometrists, pharmacists, chiropodists (podiatrists), psychologists, physical therapists, health maintenance organizations, orthotists and prosthetists, professional nurses occupational therapists, speech language pathologists, audiologists, physician assistants, physical therapists assistants and occupational therapy assistants;

(7) Registered bio-analytical laboratories;

(8) Certified nurse-midwives and nurse practitioners/clinical nurse-specialists; or

(9) Providers of other health care services or supplies including durable medical goods.

i. "Identified injury" means the following "bodily injuries" for which the New Jersey Department of Banking and Insurance has established standard courses of medically necessary diagnosis and treatment;

(1) Cervical Spine: Soft Tissue Injury;

(2) Cervical Spine: Herniated Disc/Radiculopathy;

(3) Thoracic Spine. Soft Tissue Injury;

(4) Thoracic Spine. Herniated Disc/ Radiculopathy;

(5) Lumbar-Sacral Spine: Soft Tissue Injury;

(6) Lumbar-Sacral Spine: Herniated Disc/Radiculopathy; and

(7) Any other "bodily injury" for which the New Jersey Department of Banking and Insurance has established standard courses of appropriate diagnosis and treatment

j. "Income" means salary, wages, tips, commissions, fees and other earnings derived from work or employment.

k. "Income producer" means a person who, at the time of the "accident", was in an occupational status, earning or producing income.

l. "Named insured" means the person or organization named in Item One of the Declarations and, if an individual, includes his or her spouse if the spouse is a resident of the household of the "named insured", except that if the spouse ceases to be a resident of the same household, the spouse shall be a "named insured" for the full term of the policy in effect at the time of cessation of residency. If the covered "auto" is owned by a farm family co-partnership or corporation, the term "named insured" also includes the head of the household of each family designated in the policy as having a working interest in the farm.

m. "Pedestrian" means the "Named Insured" and, if the "Named Insured" is an individual, any "family member" who is not occupying, using, entering into, or alighting from a vehicle propelled by other than muscular power and designed primarily for use on highways, rails and tracks.

n. "Private passenger auto" means a self-propelled vehicle designed for use principally on public roads and which is one of the following types:

   (1) A private passenger or station wagon type auto;

   (2) A van, a pickup or panel truck or delivery sedan; or

   (3) A utility auto designed for personal use as a camper or motor home or for family recreational purposes.

   A "private passenger auto" does not include:

   (a) A motorcycle;

   (b) An auto used as a public or livery conveyance for passengers;

   (c) A pickup or panel truck, delivery sedan or utility auto customarily used in the occupation, profession or business of an "insured" other than farming or ranching; or

   (d) A utility auto customarily used for the transportation of passengers other than members of the user's family or their guests.

3. The following definition is added to the Definitions Section for Personal Injury Protection:

   "Eligible injured person" means:

   a. The "named insured" and, if the "named insured" is an individual, any "family member", if the "named insured" or the "family member" sustains "bodily injury":

      (1) As a result of any "accident" while occupying, using, entering into or alighting from a "private passenger auto"; or

      (2) While a "pedestrian", caused by a "private passenger auto" or by an object propelled by or from a "private passenger auto".

   b. Any other person who sustains "bodily injury" while, with your permission, that person is occupying, using, entering into or alighting from the covered "auto".

4. The following are added to the Definitions Section for Extended Medical Expense Benefits:

   a. "Highway vehicle" means a land motor vehicle or trailer other than:

      (1) A "private passenger auto";

      (2) A farm type tractor or other equipment designed for use principally off public roads, while not upon public roads;

      (3) A vehicle operated on rails or crawler-treads; or

      (4) A vehicle while located for use as a residence or premises.

   b. "Insured person" means:

      (1) The "named insured" and, if the "named insured" is an individual, any "family member" of the "named insured", if the "named insured" or "family member" sustains "bodily injury":

         (a) While occupying, using, entering into or alighting from a "highway vehicle"; or

         (b) While a "pedestrian", caused by a "highway vehicle".

© ISO Properties, Inc., 2004        CA 22 30 11 04

(2) Any other person who sustains "bodily injury" while occupying a "highway vehicle" (other than a motorcycle or a vehicle while being used as a public or livery conveyance) if such "highway vehicle" is being operated by the "named insured" and, if the "named insured" is an individual, a "family member", or any other person using such "highway vehicle" with the permission of the "named insured", or

(3) Any other person who sustains "bodily injury" occupying a covered "auto" if the covered "auto" is being operated by the "named insured" and, if the "named insured" is an individual, a "family member", or any other person using the covered "auto" with the permission of the "named insured".